United States v. Stanley Reddick. Case number is 23-6946. All right. I see Mr. Henderson, you've reserved two minutes for rebuttal. You may begin when you're ready. Thank you, and may it please the court, Andrew Henderson on behalf of the appellant Stanley Reddick. This court should vacate the district court's order denying the Rule 41G motion that Mr. Reddick filed pro se below for three reasons. First, viewed as a civil complaint, Mr. Reddick's filing contained all of the allegations necessary to state a claim for the return of $8,000 taken during his arrest. Second, the district court erred as a matter of law when it directed Mr. Reddick and not the government to submit evidence in support of his claim. Third, the district court erred in relying on representations in the government's briefing as the basis for denying Mr. Reddick's motion. So taking these three points in turn, first, in Anwubeku v. United States, this court explained that when a Rule 41G motion is filed after criminal proceedings end, it is to be treated as a civil complaint. Mr. Reddick's motion easily pled enough information to state a plausible claim for relief. He alleged that $8,000 was taken in cash incident to his arrest. It is clearly plausible that Mr. Reddick would have had $8,000 on his person when he was arrested, and so those allegations satisfy the requirements of Rule 8. But is it plausible in light of the circumstances which, as I understand it, there was $1,000 the government documented, taken from him at the time of his arrest, and at the time pre-sentencing and at sentencing, he asked that certain items be returned. $1,000 was returned to him. Are you disputing that? Because he disputes it was returned, but the government says they have proof and submitted proof of return. Thank you, Judge Codd. No, we do not dispute that $1,000 was returned to Mr. Reddick. All right. So given that, wouldn't the time have been back four years, not to wait four years and say, oh, there's another $7,000 that you didn't return? You would have thought he would have said, where's the rest of my money? It is plausible that Mr. Reddick's claim was plausible on its face, despite the lapse in time before he filed his motion. It's not just the lapse in time. It's the fact that the government returned $1,000 and he never said, where's the rest of my money? That's the difference, right? Well, it's worth noting, Your Honor, that there's no evidence in the record below that was before the District Court of the $1,000 either. So that has been on appeal, but that wasn't part of what the District Court relied on, other than the government's representations in its briefing. There was no evidence of that submitted previously in the trial. Have you seen typically when someone's arrested, the police takes inventory of what they took. In this case, they took a cell phone. They claim they have proof of the $1,000, and we have some documentation that shows $1,000 and the cell phone was returned. I looked through the docket sheet. There were search warrants executed. There are returns on those search warrants indicating what items were subsequently seized. Are you claiming that there's documentation that there's another $7,000 that was seized or that the $1,000 was an error or concealment? I'm trying to sort of, you know, get my head around that. Well, it's worth noting that before the District Court, there was just the record of the $1,000 being returned that was submitted with the government's opposition to Mr. Reddick's motion. I do understand that there was a receipt of property sheet that was not before the District Court. And there was, and actually, I didn't see a search warrant return for the original search warrant in this case. So this is a case that's initiated by way of a because my iPad is uncooperative at the moment. But, and I did not see a search warrant return for that original search warrant in the District Court docket. Do you know if that's there? Because I didn't see an inventory. I have not seen one either. I am, though, aware of an inventory, not one that was on the District Court docket, but one that the government had and has been provided by my friend from the government. And somewhat unhelpfully, that receipt notes on it an undetermined amount of U.S. currency was seized. So that's all evidence, right? I mean, that's the interesting thing here. There are, maybe Mr. Reddick has some credibility problems about why he didn't bring this sooner. But is your point at this stage, this is sort of 12B6, right? That all he's, all you're asking for at this point is the opportunity or the requirement that evidence be submitted. Is that right? Absolutely. And does that require a hearing or could it be done by the District Court on remand by, on the papers? You're saying once we proceed past the 12B6? If we want to grant your motion for remand. We said, okay, fine. We'll direct the District Court to take evidence. Does taking evidence in this case necessitate a hearing or could it be done what we usually call on the papers? Absolutely. The District Court has some discretion here and certainly could proceed without proceeding to a hearing in the first instance. So as the case is more of... But if that's the case, isn't that in essence what the court did? I mean, the court did receive some documentation that shows $1,000 was returned. I looked at the docket and there is a search warrant, docket entry. Two is the application docket entry. Three is the search warrant. Then there's a motion to seal it. There were subsequent search warrants for which there were returns. I too looked for the return on the original search is the judge was given no indication here. Judge Meyer was not told, hey, it's not $1,000 they took. It's $8,000. Two, it was seized from him versus the house. And we don't have, if you have the return, if you have the inventory that typically somebody is served with, and I have this question for the government as well, why wouldn't they give us that return or give Judge Meyer that return to show, look, this is what was shown to him that was seized from him or the house at the time of his arrest and that's all that was taken. I'm struggling with what the purpose of a remand would be since the judge already has, gave both sides an opportunity to submit documentary evidence. Well, it's worth noting that the judge below was limited in the evidence that was available to him in deciding this motion. So that would be the purpose to go back. And what would you submit to the judge if we were to remand this? Mr. Reddick would be prepared to submit a declaration under penalty of perjury attesting to the facts on that day when the money was taken from his person. And why didn't he do that at the time he made his application? Well, Your Honor, it was a little unclear from the district court's order what exactly was required that, you know, he was proceeding pro se and the order directing him to file a factual predicate was a bit ambiguous. And so, you know, we think that in light of the leniency to which a pro se plaintiff is entitled to plead his case, that was sufficient for him to state a claim. You mean it was enough for him just to say I had $8,000 on my person and they took it from me, that's enough? Yes, Your Honor, we would submit so. If that's the case, then, and we agree with you, then we establish a bar that in the Second Circuit, all one has to do is come before the court and say, the cops took some money from me and that's enough to get a hearing? No, Your Honor, I do see my answer your question? Yes. Well, it's worth noting that a motion under Rule 41G is subject to the same requirements that applied any pleading under Twombly and Ictal. So the judge was entitled to screen that for plausibility. So if someone filed a motion after trial saying I want my Ferrari back, I think the judge would be able to screen that and ask for, you know, some more factual detail to make that claim plausible. But he did that here. He denied the motion without prejudice and said, look, I'm denying it for now without prejudice. Come back and show me something. And your client chose not to do that and to come here. It's true, Your Honor, but, you know, in light of the fact that $1,000 was concededly taken from him for which there was limited evidence before Mr. Reddick filed his motion, it does seem that, you know, the difference between $1,000 and $8,000 is eminently plausible in the facts of this case. So you're saying that the fact that the government conceded that they took $1,000 makes it plausible that he says they took $8,000? Yes, Your Honor. And that's, I mean, that's what the rule will be. I mean, the facts end up defining the rule to some degree with regard to the evidentiary standard that has to be met to get to a hearing under 41G, right? That is true, Your Honor. Thank you very much. Thank you, counsel. We'll see you on rebuttal. We'll hear now from counsel for the government.  Good morning and may it please the court. Assistant U.S. Attorney Sean Mahard for the United States. Judge Meyer did not abuse his discretion here when he denied Reddick's motion for the return of property without prejudice in order that ordinarily is not appealable. Reddick's refusal to avail himself of that procedure offered by Judge Meyer does not retroactively make his selection of that procedure unreasonable. Well, but why was it on Mr. Reddick? So our case law is clear that the burden is on the government once the proceeding has ended to establish that it doesn't have the property anymore or that it's reasonable to retain it, so why was it on Mr. Reddick to do more than make the allegation at that stage? Your Honor, I would agree that when there's agreement that the property's been seized, so in Allen, for example, where the burden shifting takes place at the end of the criminal proceeding, so initially it is on the defendant and then it shifts and it goes to the government. But in Allen, the government has to show a legitimate reason to retain the property, but this is different. This is different because in this case, the government never seized that additional. So you're saying Mr. Reddick needed to provide evidence that the property was seized, is that the claim? Yes, I think it's... So wouldn't that move us beyond the pleading stage? Well, I think it was fair and reasonable for Judge Meyer here to kind of chart this, what we characterize as a middle road. You know, he was very familiar with the context of this case. He'd been the trial judge in it, of course. He had received this pleading from Mr. Reddick. He says that 8,000 was taken from him and sent into arrest. The government responds, attaches a receipt and evidence log and says 1,000 was taken, 1,000 was given back. We have nothing else. I think in the face of that, Judge Meyer was able to say, okay, I'm going to deny the motion without prejudice for Mr. Reddick. But that's still a denial, right? And it's the same in the civil context. If we really place this in the civil context, you know, there's a difference between denial with leave to amend, which is what he gave here, and simply saying, you know, this is an issue that requires evidence. And so I guess what I'm trying to figure out is what evidence other than his statement, which would presume, let's assume that he would make a sworn statement that said exactly what his complaint said, what evidence would there be that the person who doesn't have the money any longer could bring forward? Especially in the absence of, and I'm going to ask you, where's the return? I mean, I signed a lot of search warrants in six and a half years as a magistrate judge, and I followed up asking for returns. I'm sure that people in your office have said that. But I'm unclear on where the return is here. So I'll answer that second question first, Your Honor. So the search warrant return is not on the docket. I did provide that search warrant return to my friend on the other side. But why hasn't it been docketed now if you have it? It's part of the record in the criminal case. Yes. And I think the warrant form, if I can remember, it says it shall be returned to the magistrate judge who swore it. That is correct, Your Honor. So. And I will say that our office, typically, we will docket those returns as required by the magistrate judge, and that's an important part of it. It was not done here. It was provided to Mr. My friend on the other side. And their characterization of it is accurate. In there, it says undetermined amount of U.S. currency. Typically, in those situations, and this isn't in the record, but, you know, the agents will then typically take it to a bank. It'll be counted out. Okay. So there's an undetermined amount is what the receipt says. Yes. And it's in small bills, I believe, the ATF receipt says. Correct, Your Honor. And by chance, the undetermined amount is precisely $1,000 of small bills. Yes. You don't feel like there's something there that would be sufficient for a judge to make a credibility determination about whether it was $1,005 or $7,950 or exactly $1,000 or exactly $8,000? That's interesting that it was exactly $1,000 worth of small bills. Yes. Well, Your Honor, that's our understanding. It was $1,000. In the receipt log, the agent, you know, when he returned it to Mr. Reddick, that's what was provided back to him was the $1,000 that was seized. Well, remember, it was returned to Mr. Reddick once he was in custody. So it wasn't done in the way that Mr. Reddick stood there and counted it and had a conversation, right? No, that is correct. So the government did not forfeit it at sentencing. And so then after sentencing in the summer of 2022, June, I believe, it was then returned to him and documented. And of course, the AUSA below had attached that to the opposition to Reddick's 41G. So I think... Go ahead. I'm sorry. What was the date of the return of the $1,000? July 5th, 2022, Your Honor. I can check. I have the record in front of me, but I believe that was when it was signed. And what was the date of the application under 41G? It was in 2023, July 24th of 2023, Your Honor. There was no objection at the time of the date of the return from Mr. Reddick. He raised no complaint. I apologize, Your Honor. I mean... I'm sorry. Could you hear me? Did he raise no complaint on the date of the return? No. And it was returned to him. He did not. And it was returned by what a deposit into his commissary? Yes. And there was proof of that, that the government has... or submitted to Judge Meyer? We did not submit the actual deposit into the commissary account. We have that information. We have provided that to our friend on the other side. And, you know, as I think I believe during their argument, they've acknowledged that he received that thousand. At the time of sentencing, he requested the iPhone and some documents, which were claimed to have been personal documents that he would need in the future. Yes, Your Honor. He didn't ask for the money at that point. He did not, Your Honor. Was the money discussed at all? As far as my understanding of the record, no. The money at the time of sentencing was not discussed. And you said that the return on the original warrant was served on the defendant? Yes. It was provided as a part of the discovery and also provided it to a... And to his attorney? Correct. Okay. So presumably, well, it said undetermined cash, so it didn't say a thousand dollars. When was the defendant first advised that the amount of $8,000 would be returned? Your Honor, I'm sorry. I don't have that information right at the tip of my tongue. Well, we certainly know on July 5th when it's allegedly 2022 deposited into his. But the government makes an argument that he waited four years to ask for $8,000 to be returned. And so that would suggest that he would have known that only a thousand was to be returned. Yes. And in Judge Meyer's order, he, you know, mentions too that, you know, an explanation of why the delay in seeking it. And I think as the briefs unpack, I mean, we're not, I don't think that that's construed as, you know, his claim wasn't timely. I think as we make the argument That's not what I'm asking. What I'm asking is implicit in that argument is that the defendant was aware the government was claiming it had only seized $1,000 and he didn't ask for more back. So I'm trying to understand what the government's basis for that claim is. I'm sorry, Your Honor. Could you ask the question a different way? Sure. So the government's argument and the court noted this, he doesn't mention $8,000 until 2023 when he first files a motion. A thousand dollars is returned to him in 2022. Yes. He pleads or is arrested in 2019 Correct? 2017, I believe. 2017. He pleads guilty 2019. And the court says you waited four years to ask for $8,000 back. That assumes that he understood that the government thought or was representing it had only taken a thousand. When did he know, first know the government records showed only a thousand? Because the original return says undetermined amount. Okay. I don't have a direct answer to that question, Your Honor. I would assume he knew that the thousand, it was exactly a thousand when he received it back in 2022. Okay. So then he waited a year, not four years to claim it's $8,000. Correct. I mean, right. It sounds like we have an evidentiary problem. I don't think so, Your Honor. I mean, I think that Judge Meyer kind of middle road that he chose here was reasonable, permissible under all of the circumstances, kind of in the face of the cogent representations from the government, that, you know, a thousand had been taken, a thousand had been returned. But we just had an unsworn representation from the plaintiff or the defendant, Mr. Reddick, versus an unsworn representation from a government attorney who wasn't involved. I don't believe Mr. Silverman was directly involved in the underlying case. But anyway, we have a representation from the party and a representation from an attorney. Those are on the same ground, right? The problem is that this feels like it's elevating the unsworn statement of the government's representative over the unsworn statement of the defendant, which maybe in a credibility battle, that is the way that comes out. But we don't do credibility at the pleading stage. So two responses to that, Your Honor. The first is I think the receipt is evidence that it's signed, it's dated. So that would be sufficient for Judge Meyer to consider at this initial stage. But it doesn't say it was all the money that was returned. It just says we're returning a thousand dollars. And so I do think AUSA Silverman's statements in the brief provide context to that receipt itself. And, you know, I understand that the case law is clear. This is a, you know, you know, pro se civil pleading. But I don't think wholesale all of kind of, you know, all of the rules of civil procedure are directly applicable here. And so I would think, you know, just like in sentencing, just like in the 2255s, and we mentioned this in our briefing, trial judges here need discretion. They need the ability to sort of fashion procedures to resolve factual disputes without immediately going to an evidentiary. So he was resolving a factual dispute. And actually your opponent said he, that a hearing is not necessarily required here. No, no, I agree. So I agree that the judge needed to resolve a factual dispute, which is what you've just said the judge needed to do here. Yes, and I think by... And he's allowed to do that without taking evidence under our precedent about 41G. Well, wait a second. He offered, he offered, he denied without prejudice, did he not? So wait a second. It's not that he denied a hearing. It's that he denied without prejudice to give the fellow an opportunity to be able to be more specific than just saying it was, he lost $7,000. And he allowed Mr. Rickard to make some further factual representations, which might have further buttressed his claim. But right now we, and that was passed on by Mr. Riddick, Mr. Riddick. And so the question before us is, as a matter of law, is simply saying they took my money without anything more enough, right? Yes. Okay. And... Now, isn't it part of the problem that because he didn't take advantage of having been a trial judge, I did often grant or deny, I denied motions without prejudice just to do precisely that. Look, I'll give you another chance. Give me more than what you gave. Not just, I had $8,000. He could have said, they took $1,000 from me and then they went into my bedroom and in my dresser I had $7,000. It was in a brown box. Along with the drugs that they seized or the documents, there was an envelope and it had Bank of America and 7,000 in cash, something than to just say, I had a Maserati parked in the driveway and they took it. But the problem is that because the judge gave that opportunity and the defendant didn't avail himself of it, I'm wondering if this is even appropriate for a Jacobson remand. Sadly, Judge Meyer is no longer with us, but we've done that even in cases where judges have retired or are no longer available to hear a matter. It seems like this may be appropriate for a Jacobson remand. And then the judge can look at what you have that you didn't submit to us or presumably Judge Meyer and the defendant can explain where the $7,000 was that was taken. Your Honor, I absolutely take the point. I do think there's enough here for this court to affirm. And I do think that under the circumstances that the path that Judge Meyer charted here was reasonable and appropriate. Mr. Reddick declined the opportunity to amend Appendix 17 and two weeks later filed a notice of appeal, right? That is correct. Yes, Your Honor. So he waived his right to have present more evidence to the court. Okay. Thank you, counsel. Thank you. Mr. Henderson, you reserve two minutes. How about that, Mr. Henderson? Did he waive his right to present more evidence to the court? No, Your Honor. He did not. He waived his right to replete his complaint. Wait a second. He took an appeal for an order based upon the representation. So he has this court to decide whether there is a material issue of fact which necessitates a hearing under 41G as to that he's made out a plausible claim that he owned $8,000, correct? Yes, Your Honor. All right, so we measured straight up on what he said. He did take a notice of appeal from the judge's order. That is correct. So he doesn't say that somehow Meyer didn't give him an opportunity to have to present more facts because Meyer did. So that's not part of his claim. He says that the facts alone create a plausible claim that he's entitled to a hearing. Well, not necessarily entitled to a hearing, Your Honor, as discussed with Judge Merriam, but he is also arguing that by putting the burden on him to submit evidence that the district court misapplied the court's case law, requiring that burden on the government. I did want to address... Wait a second. He's the one that seeks through. Generally, when the burden's on the government, it's because there's a dispute as to who owns it. But it certainly seems to me that if a simple reading of 41G says, if somebody comes before the court and says, hey, I have some property that the government hasn't given back to me, the first thing he has to say is, have you asked the government for it? Then that creates something maybe that shifts the burden to the government, but the government might concede that they have it. But first of all, you have to establish it's my property, don't you? You don't have to... Are you saying there's no burden on him to establish that it's his property? Well, he would have to plead a plausible claim to property that was taken by the government. Okay. So he bears the initial burden. Well, that's showing in a civil complaint would have to be plausible, but the court's case law in Mora and Rufu, there were similarly disputes over the extent to which the property had been taken from the claimant. And so we think that those cases are on all fours with this case. I did just want to emphasize, and I see my time has elapsed, so. Thank you, counsel. All right. Thank you. All right. Thank you both. Well argued by counsel. We appreciate your efforts. We'll take that case under advisement. We'll move next to the matter of Donner versus Der Spiegel. Case number is 24-2654. May it please the court. Nathan Holcomb for appellant Rebecca Donner. This appeal calls for this court to clarify the scope of its holding in Bessalon Van Lines v. Walker, and specifically to clarify whether it's the case that activity related to distribution of defamatory material is excluded from the jurisdictional analysis under CPLR 302A1, whether the research, drafting, or editing of defamatory content in New York is necessary for New York jurisdiction as a district court held, and whether activities in New York related to the distribution of defamatory material can support jurisdiction provided that those activities involve something more than the defendant's utterance of a defamatory statement in the state or distribution of some defamatory material. Into the state. So I'd like to focus on the facts of Bessalon Van Lines and the reasoning in Bessalon Van Lines. Are you asking us to disagree with Bessalon Van Lines or to narrow it or to broaden it? I'm asking the court to clarify the scope of its holding in Bessalon Van Lines. I disagree with the district court's interpretation of Bessalon Van Lines and with my colleagues' interpretation of Bessalon Van Lines. I don't think it's necessary to overrule Bessalon Van Lines to accept the argument that I'm advancing on Helen's behalf. And how so? How would that not overrule that case? That case is very specific to defamation lawsuits. Yes. It's specific to defamation lawsuits, and it was decided based upon the facts that were presented to this court. And those facts were that the defendant was an individual residing in Iowa. He was running a non-for-profit website from his home that provided comments about moving companies. And he made a comment on his website about the plaintiff, Bessalon Van Lines, in that case. There was a portion of his website that was designed for accepting donations. And that's what this court said was the interactive portion of the website. And the court said that there wasn't a relationship between the interactivity of the portion of the website that was for accepting donations and the claim, which was based on just posting defamatory statements that could be accessed anywhere in the world where the Internet is available. And that obviously includes New York. And what the court said was that merely making a defamatory utterance or distributing some defamatory material into New York isn't enough. There needs to be something more. But it never said that activities related to distribution could never constitute a transaction of business that established as long-arm jurisdiction under the CPLR. And I think it's important to note the New York cases that Bessalon Van Lines cited. I mean, we're here ultimately interpreting a New York statute as to the first issue on which the district court decided. And this court cited the New York cases applying that statute, including Sovic v. Healing Network from the Fourth Department. Now, that was a case that was dealing with an allegedly defamatory letter. And in Sovic, the Fourth Department said, plaintiffs have made a sufficient start in demonstrating that facts may exist to establish that solicitation of funds by dissemination of the letter to members of the Institute constitutes the transaction of business under CPLR 302A1. So there's precedent from the Fourth Department clearly allowing that distribution of defamatory material within the state can constitute a transaction of business under CPLR 302A1. But hasn't the New York Court of Appeals said that when it comes to defamation claims because of the First Amendment implications involved, the standard is different and a little bit more narrow? Yes, it has. So, you know, it's great that the Fourth Department has decided one way, but when the New York Court of Appeals has decided something else, isn't that what we should follow? What this court in a diversity case is doing is predicting how the New York Court of Appeals would rule. So, yes.